THIS CASE HAS NOT BEEN SCHEDULED FOR ORAL ARGUMENT

No. 15-5041
(Consolidated with 15-5043, 15-5060, and 15-5061)

In the
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

HUMANE SOCIETY OF THE UNITED STATES, *et al.*,

    Plaintiffs-Appellees,

v.

S.M.R. JEWELL, *et al.*,
STATE OF WISCONSIN, *et al.*, and
U.S. SPORTSMEN'S ALLIANCE FOUNDATION, *et al.*,

    Defendants-Appellants.

Appeal from the United States District Court
For the District of Columbia

**REPLY BRIEF FOR DEFENDANTS-APPELLANTS
STATE OF MICHIGAN AND MICHIGAN DEPARTMENT OF
NATURAL RESOURCES**

Bill Schuette
Attorney General

Aaron D. Lindstrom
Solicitor General
Co-Counsel of Record

Nathan A. Gambill
Assistant Attorney General
Co-Counsel of Record
Attorneys for State of Michigan
and Michigan Department of
Natural Resources - Appellants

Dated: April 26, 2016

Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 373-7540

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................. i

Table of Authorities ............................................................................. ii

Introduction ......................................................................................... 1

Argument ............................................................................................. 2

I.     The Humane Society effectively concedes many of Michigan's arguments. .................................................................................... 2

II.    The Humane Society's factual premises are unsupported. ............. 6

Conclusion and Relief Requested ...................................................... 10

Certificate of Compliance .................................................................. 12

Certificate of Service ......................................................................... 13

# TABLE OF AUTHORITIES

Page

**Statutes**

16 U.S.C. § 1532(3) ............................................................................... 4

Mich. Comp. Laws § 324.40106 ............................................................ 8

Mich. Comp. Laws § 324.95153 ............................................................ 8

Mich. Comp. Laws § 324.95163 ............................................................ 8

**Regulations**

81 Fed. Reg. 8663-01 ......................................................................... 4, 5

# INTRODUCTION

The Humane Society's response to Michigan's brief is essentially a non-response. Instead of addressing Michigan's arguments, the Humane Society largely misunderstood and then ignored them. The Humane Society did not attempt to refute that the text of the Endangered Species Act (ESA) recognizes the need for the voluntary participation of States for the ESA's purposes to succeed, and that the district court's ruling upends the built-in system of incentives that invites the States' participation. Nor did the Humane Society provide any support for the district court's conclusory, one-sentence ruling that the Fish and Wildlife Service did not adequately consider Michigan's wolf management plan. Instead, the Humane Society resorted to inaccurate accusations against Michigan in what appears to be an attempt to draw attention away from the fact that the Humane Society does not actually have a substantive response to Michigan's arguments.

# ARGUMENT

## I. The Humane Society effectively concedes many of Michigan's arguments.

The Humane Society's response to Michigan's arguments is unusual because it is written as if Michigan did not make arguments based on the text of the ESA, the administrative record, and established Supreme Court precedents when – in fact – Michigan did do so. The most likely explanation for the Humane Society's unorthodox approach is that it does not actually have a response to Michigan's arguments. Its silence, therefore, means that the Humane Society concedes many of the arguments.

Michigan cited to record evidence to demonstrate that wolves likely cannot recover in most states outside of the Western Great Lakes. (Mich. Br., pp. 10-11.) This fact is critical because it highlights that the result of the district court's ruling – that the Fish and Wildlife Service cannot delist wolves until they have recovered nationwide and in Mexico – is that the wolf will remain listed permanently. The Humane Society did not respond to this fact with a citation to any evidence to show that wolves actually *can* recover nationwide and in Mexico, which is apparently the extent of recovery the Humane Society believes is

necessary before any wolf population within the United States can be delisted.

Instead, the Humane Society doubles down, confirming that its position truly is that no matter how healthy the Western Great Lakes population becomes, the population is endangered until "the wolf population . . . throughout the country" has also recovered. (HSUS Br., p. 75.) That is, the Humane Society did not respond to Michigan's demonstration that the factual premise of the Humane Society's primary legal position is unsupported.

The Humane Society characterizes Michigan's opening brief as a "policy statement on wolf management" that "complains about the ESA." (HSUS Br., p. 73.) That is not accurate. Michigan focused on the text of the ESA and Supreme Court precedents to show that Congress respected two legal realities when it designed the ESA. First, the management of wild animals is a State prerogative that federal regulators can override only under narrow circumstances.

(Mich. Br., p. 12.)[1] And second, neither Congress nor federal regulators can force States to implement a federal program. (Mich. Br., p. 13.)

The text of the ESA shows that Congress understood that its authority to regulate wildlife is limited. The Humane Society makes much of the fact that the purpose of the ESA is to conserve threatened and endangered species. (HSUS Br., pp. 7, 16, 27, 30, 32-33, 36, 48, 50, 55, 62.) But the meaning of "conserve" under the ESA is "to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter *are no longer necessary*." 16 U.S.C. § 1532(3) (emphasis added). That is, one primary purpose of the ESA is to return management of threatened and endangered species to the States once the basis for asserting federal jurisdiction has expired. For this reason, Michigan strongly echoes the Fish and Wildlife Service's conclusion that the "*delisting* of recovered species is every bit

---

[1] The Fish and Wildlife Service and National Marine Fisheries Service further confirm this reality in their latest Cooperative Policy Regarding the Role of State Agencies in Endangered Species Act Activities: "States possess primary authority and responsibility for protection and management of fish, wildlife, and plants and their habitats" unless that primary authority is "preempted by Federal authority." 81 Fed. Reg. 8663-01.

4

as consistent with the text and purposes of the ESA as is the *listing* of endangered species" (FWS Reply Br., p. 12.) (emphasis added).

This accurate characterization of the ESA's purpose – to list species as necessary and then actively work to delist them – should inform the Court's interpretation of the ESA provisions already discussed in detail in the Fish and Wildlife Service's opening and reply briefs. The Humane Society apparently has no response to this argument. The argument matters because it further highlights the absurdity of the district court's conclusion that the listing of a distinct population segment is a "one-way ratchet." (Op., pp. 66-67.)

The text of the ESA also shows that Congress understood that (1) while it could forbid a State from authorizing the taking of a species that was threatened or endangered, (2) it could not force States to implement the ESA, (3) even though for the ESA to succeed, States would have to implement it.[2] (Mich. Br., pp. 13-16.)

---

[2] The Cooperative Policy Regarding the Role of State Agencies in Endangered Species Act Activities also further confirms the State's necessary role: "State agencies have the capabilities to carry out many of the actions identified in recovery plans and are in an excellent position to do so because of their close working relationships with local governments and landowners." 81 Fed. Reg. 8663-01.

And States agree to implement the ESA largely because of the incentive that species will return to State management once recovered. (Mich. Br., pp. 15-17.) The Humane Society apparently has no response to this argument. The argument matters because it shows that by making it virtually impossible to delist the Western Great Lakes distinct population segment of wolves, the district court upends the fragile balance of Federal-State cooperation required for the ESA's success. (Mich. Br., pp. 17-19.)

II. **The Humane Society's factual premises are unsupported.**

The Humane Society's attack on the evidentiary record depends primarily on the premise that the death of *any* wolf *anywhere*, or the existence of *any* threat to wolves, is an existential threat to the wolf population as a whole for the purposes of the ESA. (HSUS Br., pp. 67-72.) The Fish and Wildlife Service aptly dismantles this flawed premise, and Michigan need not repeat the Service's briefs. (FWS Opening Br., pp. 74-84; FWS Reply Br., pp. 36-40.) Instead, Michigan will focus on the Humane Society's attempt to discredit Michigan's commitment to its wolves.

First, the Humane Society asserts that "hunting" had a "dire impact" on Michigan's wolves between the time of the Final Rule and the district court's opinion. (HSUS Br., pp. 69.) While the Humane Society attempts to rely on extra-record evidence to support the same accusation against Minnesota and Wisconsin, it does not even attempt to substantiate its accusation against Michigan. The accusation is unfounded.

Second, the Humane Society accuses Michigan of not complying with its own wolf management plan, and not being willing to enforce it. (HSUS Br., pp. 70-71.) But the Humane Society cites no evidence whatsoever to support the accusation. The accusation is also unfounded.

Finally, the Humane Society accuses Michigan of planning the "elimination of more than 66% of the wolves currently located within its borders." (HSUS Br., p. 75.) The Humane Society asserts that, because Michigan has set a numerical floor of at least 200 wolves, Michigan is "committed to maintaining" no more than 200 wolves. (HSUS Br., p. 75.) But as Michigan already explained, it is committed to maintaining *more* than that, but has not set an upper goal because it does not want

7

to create downward pressure on the wolf population once an artificial upper goal is reached. (Mich. Br., p. 27.) Instead, Michigan will rely on the latest data to ensure that its wolf population provides "all of the ecological and social benefits valued by the public." AR 436. Despite that explanation, the Humane Society assumes that Michigan plans to kill the rest of the over 600 wolves currently living in the state. The assumption is demonstrably false.

The unauthorized killing of wolves in Michigan is illegal regardless of their federal status. Mich. Comp. Laws § 324.40106. And the Michigan Department of Natural Resources will only recommend a wolf hunt to the Michigan Natural Resources Commission under narrow circumstances.[3] (Mich. Br., pp. 27-28.) Considering Michigan's multi-decade devotion to the recovery of Michigan's wolves, the Humane Society's accusation that Michigan will systematically "eliminate" hundreds of its own wolves is not only incorrect, it is inappropriate.

---

[3] Michigan enacted laws that will go into effect if wolves are delisted from the federal endangered species list which authorize the killing of a wolf, outside of an authorized hunt, only if the wolf is "in the act of preying" upon a dog or livestock. Mich. Comp. Laws § 324.95153; Mich. Comp. Laws § 324.95163.

8

As Michigan explained in its opening brief, it began protecting wolves in 1965, before the ESA even existed, and for the more than 50 years since that time has led the way in wolf recovery and conservation. (Mich Br., pp. 20-30.)  The Humane Society evidently has no response to this history, resorting, instead, to inflammatory and unwarranted accusations.  Importantly, the Humane Society has failed to identify a reason for disrupting the Fish and Wildlife Service's sound conclusions that Michigan is "an innovative leader in wolf recovery efforts" (Mich. Addendum A47), and its "history of leadership in wolf recovery and its repeated written commitments to ensure the continued viability of a Michigan wolf population . . . further reinforces that [Michigan] will provide adequate regulatory mechanisms for Michigan wolves" (Mich. Addendum A46).

## CONCLUSION AND RELIEF REQUESTED

The district court's ruling goes against the text, purpose, and structure of the ESA by eliminating a primary incentive necessary to the States' voluntary implementation of the ESA. The Humane Society conceded many of Michigan's arguments by failing to respond to them, and the inflammatory accusations the Humane Society made to distract from their inability to respond to Michigan's arguments are unfounded.

Accordingly, Michigan requests that this Court reverse the district court's ruling and reinstate the Final Rule. Michigan also requests any other relief the Court considers appropriate.

Respectfully submitted,

Bill Schuette
Attorney General

Aaron D. Lindstrom
Solicitor General
Co-Counsel of Record

*/s/ Nathan A. Gambill*
Nathan A. Gambill
Assistant Attorney General
Co-Counsel of Record
Attorneys for State of Michigan
and Michigan Department of
Natural Resources - Appellants

Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 373-7540
gambilln@michigan.gov

Dated: April 26, 2016

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation in the Court's July 29, 2015 order because this brief contains no more than 3,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  There are a total of 1,729 words.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2013 in 14 point Century Schoolbook.

*/s/ Nathan A. Gambill*
Assistant Attorney General
Co-Counsel of Record
Attorney for State of Michigan
and Michigan Department of
Natural Resources - Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 373-7540
gambilln@michigan.gov

# CERTIFICATE OF SERVICE

    I certify that on April 26, 2016, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

    */s/ Nathan A. Gambill*
Assistant Attorney General
Co-Counsel of Record
Attorney for State of Michigan
and Michigan Department of
Natural Resources - Appellants
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 373-7540
gambilln@michigan.gov